The last case on for argument today is Latin American Music Company versus Spanish Broadcasting System. Good morning, your honors. May it please the court, my name is Robert Penchina, I represent the- Mr. Penchina, could I just get you to move slightly to your right? Yes, your honor. There you go, and if you want to- I don't know whether the podium comes up more, but- No, no, this is fine. Okay, thank you. And thank you. The district court made three reversible errors in this copyright infringement case. The first was at the summary judgment stage where the district court found that the plaintiffs were barred from asserting or establishing ownership of the copyrights at issue. And the sole fact that the district court relied on in that context was that there had been registrations done by a third party, in the court's words, decades before. And so the court said that because the registrations provide constructive notice, that that was enough to bar these plaintiffs from being able to claim that they now own the copyrights. Bar them on the basis of the passage of time, or bar them on- On the statute of limitations. There's a three-year statute of limitations. We're talking about ownership. We are talking about ownership. We're talking about applying- You didn't bring your suit until much more than three years after you acquired the rights. Correct. Even if you're right, even if the district court was wrong in saying that you were barred because the original registration had occurred many years earlier, the district court was nonetheless correct that you were barred. The infringements that took place were much later, and the claims weren't brought until there were these infringements. As to ownership, as to your claim of ownership- Well, here's the sequence. The registration that occurred decades earlier was inconsistent with your claim of ownership. Correct. Even if you weren't barred at the moment when you acquired, you were barred. You had three years to do something to establish ownership. Well, they had three years under the discovery rule from when they were put on notice that there was an adverse claim of ownership. So the sequence here is you have an initial copyright term, and you have in the early 1970s a registration done by an entity called FANIA on seven songs. In the 1990s, my client acquires the rights to these songs, in some instances from the heirs of the original composers. And some of these rights are in the renewal term of the copyright. You didn't argue the renewal term point to the district court. Correct. The claim was not made specifically in that context, but it would be manifestly unjust. There were all sorts of issues in the district court, and many arguments were not made. Counsel who handled the case in the district court is subject to, in order to show cause as to why he should not be sanctioned over much of the conduct in the district court. So things went off the rails, and the argument was not made. But it would be manifestly unjust to hold it against this client to say that they have lost their rights. And this circumstance of these registrations is no different than the circumstance faced by this court and Your Honor in Wilson v. Dinotone, where Your Honor had indicated that it would impose far too great a burden on a reasonably diligent plaintiff to have to search the copyright records to see if a reasonably diligent author, an author, author who authors a work of copyright, is not compelled to go thereafter continuously searching the records of the copyright office to see whether somebody else has filed a claim to the work that the author knows he himself created. But that's a different circumstance from somebody like your client who comes in decades later and buys it and has the opportunity at that moment to look at the records of the copyright office and see that there is an incompatible claim of ownership dating from 30 years ago. Well, the claim is not necessarily incompatible, and that also was addressed by Your Honor in the Wilson case, because if there is a registration that relates to the first term of copyright, it's not necessarily incompatible 20 years later when you obtain rights from an heir. For the renewal term. For the renewal term. Yes, but that's the point that you never argued to the district court. Understood, Your Honor. But as a matter of copyright law, that makes a difference for starters. This is a sort of abstract academic thing for us to think about in the future. You're offering it. You're not making the argument. Well, my argument, Your Honor, is that, again, it would be manifestly unjust. That would be a basis for this court to consider arguments that had not been raised below, and it is also a matter of law as opposed to requiring factual information, and that also makes it appropriate. Turning to the — Let me turn to you since your time is sort of running out. Yes, Your Honor. What do we do with the district court's finding, and I think this is it, at Appendix 24, the president of LAMCO plainly admitted that his sister-in-law, not LAMCO, owns the rights to the songs which were transferred to her in 2002. Yes, Your Honor. Isn't that sort of deep sick? Not sort of. Doesn't that deep sick, your plaintiff's claim? They didn't put any evidence contrary to that. No, Your Honor, it does not, and, again, there was confusion about that point. The rights at issue were all — the ownership of the copyrights were, in fact, transferred to Ms. Vera and were licensed back to the plaintiffs by an exclusive license, and that — Which they lost because of the bankruptcy? Well, that exclusive license first was in the records, so it was part of what was before the district court, number one. But they did not lose it because of the bankruptcy. The court did make that observation that there is a provision in the agreement that says it would automatically terminate should they go into bankruptcy, but that is a type of clause that is barred by the bankruptcy code. Was that argument made to the district court? Once again, that was not made to the district court, and it's the same — What do we do with that? Your Honor, once again, it's that same issue where it is an issue purely of law, number one, and, number two, it would be manifestly unjust not to take it into account, and those are circumstances where this Court may observe — may take the argument. My friends, on this side — And then there's a final point, which is that the only evidence of infringement came from a client who was found incredible. And so what's your argument there? We are not appealing from that decision. No, but that's determinative of the question, right? That is determinative of some of the question because — Correct. It's determinative of those. It is determinative of those. There is case law from the Supreme Court that is cited in our papers that say when you're dealing with the validity of rights, as well as infringement, the better practice of the Court is to address both issues, even if you've already determined dispositively on whether or not there was infringement, because the public and the parties are better served — There was an infringement that they couldn't — the Court couldn't — I'm sorry, Your Honor, I did not hear you. The Court could not find infringement. Correct. But you would say that we need to address the ownership question or standing question or however you want to phrase it. But why isn't that just then you're asking us for an advisory opinion? It would not be advisory for two reasons. Number one, it's not advisory with respect to the FANIA works. That's still a live issue. And whether or not there was infringement was never decided for the FANIA works because they were dismissed on summary judgment. As to the broader works where there was no infringement found, that again would be because the issue is still live more broadly for the public and for the parties to this case, even if there is no infringement, it's the better practice, according to the Supreme Court, to determine validity when there's validity of rights that were at issue. It doesn't matter to the outcome of the case. Well, here it would matter because we're hopeful that the other claims will be sent back and reversed. But, yes, even where it doesn't matter ultimately to the case. Yes. And, Gina, you've reserved two minutes for rebuttal. Thank you, Your Honor. Mr. Fitzpatrick. Good morning, Your Honors, and may it please the Court. Jim Fitzpatrick for the Appellee Spanish Broadcasting Systems. First, I want to emphasize that none of the arguments that the appellant is currently making on this appeal were raised at the district court level. With respect to the ownership of the copyrights, they first took the position wrongly, as it turns out, that the appellants themselves were the owners of the copyrights, and they failed in discovery, despite it being called for, to produce the agreement that showed on its face that they were not the owners of the copyright. We only found that because it was filed in the bankruptcy proceeding in Puerto Rico and was publicly available. Then, when their only witness is cross-examined with that document to show that his claim of ownership was, in fact, false, neither he nor his lawyer pointed the court to the clause they now point to to say that he got an exclusive license back. They pointed the court to a clause that showed that he got a non-exclusive license back, which no one disputes is insufficient to bring a copyright infringement case. In addition, when confronted with the bankruptcy clause that Your Honor asked about, they didn't make any argument about impermissible ipso facto clauses. Instead, their only witness testified that he had entered into an oral agreement with the counterparty to that contract, who was his sister-in-law and the secretary of the corporation, where she had agreed that she would not enforce or she would not end the contract because of that clause. That was the only argument that he made in response. In addition, as Your Honor pointed out, the appellants never made the argument that they were the owner of renewal rights to the district court. In fact, they didn't respond to any of the statute of limitations arguments at all in their opposition to the motion for summary judgment. So for those reasons alone, all of these arguments have been waived. They were available to the parties below, and they were not made. In those circumstances, this court ordinarily does not consider them. As to the question of manifest injustice, I think if Your Honors review the record below with the pattern of discovery abuses that unquestionably occurred, and if Your Honors review the trial transcript where every aspect, where Judge Sullivan found every aspect of the appellant's only witness completely noncredible, it's clear that there's no manifest injustice here if the plaintiffs don't prevail on this copyright infringement suit. The second issue is that this appeal does not affect the outcome of the case, certainly with respect to the works that went to trial. There's two elements needed for copyright infringement. One is ownership. Two is infringement. They only had one type of evidence on infringement because they failed to produce the recordings that they allegedly made, and that was the appellant's only witness and president. After cross-examination, Judge Sullivan, and rightly so based on the record, found his testimony to be completely noncredible. So those claims fail, even pursuant to appellant's own admission. It is true, of course, that the works where there was summary judgment before trial, there was no testimony about whether or not those works were infringed. That's true. But the record would have been exactly the same. They would not have been allowed to introduce any evidence of recordings because they were not produced. He had no notes. He had nothing other. The sole witness would have had nothing other than that same recollection that he claimed to be able to recall, having heard those works several years before. The judge already found all of that testimony to be noncredible. And with respect to all of the ownership issues that we've talked about, those would have applied to the summary judgment works as well. So even if there were any error in Judge Sullivan's ruling on summary judgment, which there was not, reversing that summary judgment to send it back to Judge Sullivan to make the same credibility findings that he's already made would be a pointless exercise. Finally, with respect to the summary judgment motion, Judge Sullivan's summary judgment ruling was correct, and I think it's important to put into context exactly what the timeline was here. Every one of the Fania works, and this is undisputed, were authored, transferred to Fania, registered with a copyright office back in the 1970s. And the evidence is also that this is a legendary Salsa catalog, and while they may not be household names to your honors or to me, in fact, to anyone who deals in Latino music, which the parties in this case do, these are very well-known works. So it was very well-known that these works were out there being performed, being exploited by Fania for several decades, before the appellants even claimed to have acquired the works and registered them with the copyright office. They didn't put in any evidence that they did any type of due diligence to learn how it is that they could be acquiring these decade-old works that were already owned by somebody else. They put in no evidence of that. Instead, all they have is the bare registration, which in many cases indicates that they acquired the works from an author who's different than the author who was listed on the copyright certificate several decades ago. And that is an... Would you reprise for me the chain of ownership that they are claiming? Sure. Well, sure. I'll take one work, for example, because it does vary a little bit by work. So I'll start with the work Mijente. So Mijente was written sometime prior to 1975 and transferred by the author, Johnny Pacheco, to Fania. Fania registered that work in 1975, listing in the copyright registration certificate Johnny Pacheco as the author. There's also additional evidence that both Fania and Johnny Pacheco had actually been paid royalties on that work by Broadcast Music Inc. or BMI. Appellants claimed to have tamed their rights from an heir, a single heir, of Hector Laveau more than two decades later, in the late 1990s. And then they registered it, claiming that they had obtained the rights from Hector Laveau's heir. But first of all, they never checked whether or not it had been registered... They never checked whether it had been registered before or how it is that they could be obtaining the rights to this work that had been out there and well-known in the Salsa community for two decades. Nor did they check the copyright registration certificate from the 1970s, which would have shown that Hector Laveau didn't write it. Johnny Pacheco wrote it. And that also shows the problem with their renewal term argument, in addition to the fact, of course, that they never claimed to own the renewal term below and are making that argument for the first time on appeal. But they couldn't be obtaining the renewal term from Hector Laveau because Hector Laveau is neither Johnny Pacheco, of course, nor an heir of Johnny Pacheco. So there's no way that Hector Laveau could have obtained the renewal rights to a work that neither he nor a predecessor had ever written. And so that's an example of one of the works. That's fine. Thank you. Thank you. So what should they have done upon acquiring the work from an heir to Hector Laveau  and seeing the Fania registration attributing the authorship to Pacheco? What should they have done at that point? Well, I think at that point they had to, A, do some additional inquiry to see whether the person from whom they were actually acquiring the work actually had valid rights. At that point, they could have checked. I mean, there's evidence in the record. There's newspaper articles. They could have gone to check the record label. Or they could have brought a lawsuit at that time. Correct. Against whom? In that case, they would have had to bring the lawsuit against Fania and Johnny Pacheco, the original author and the owner of the copyright. They at least would have had to do that within three years of purporting to obtain the work. But I'd also argue there's even a step before they had to file the litigation, because in order to be a subsequent good-faith transferee, you have to have a good-faith basis to believe the person from whom you're acquiring the work actually wrote it. And they didn't put in any evidence whatsoever that would support a good-faith belief that it was written by Hector Laveau when, in fact, it had been registered decades earlier and exploited and royalties had been paid to Johnny Pacheco just to cite that one particular work. If Your Honor has no other questions, that concludes my argument. Thank you, Your Honor. Thank you, Mr. Patrick. Excuse me. Mr. Pacino? Two minutes? Yes, Your Honor. All of these issues in terms of who another author may have been, who may have originally been the rights holder, are factual issues which the Court did not get into on summary judgment. The Court relied on a single fact that there was a preexisting registration and said it was that registration alone that was sufficient to put these folks on notice. And we argued before that is insufficient. And in terms of addressing the arguments that were not made below, this Court in Baker v. Dorfman and many others has said that a court has broad discretion to consider issues not raised initially in the district court. And generally the standard is if it is either a purely legal issue or if it is an issue that is necessary to avoid manifest injustice. And we would submit that in this circumstance it would be manifestly unjust to say that my clients don't have the rights through their license, that nobody disputes provided exclusive rights, nobody disputes that the ipso facto clause is ineffective, and it would be unjust to leave that decision on the books. And we appreciate your hearing us. Thank you. Thank you, Your Honor. Thank you both. We'll reserve decision in this case. The remaining two cases, Balkany v. United States and Hirsch v. John Doe, are on submission. So I will ask the clerk please to adjourn court. Court is adjourned.